# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3918

_____

| | | |
|---|---|---|
| William R. Cody, individually and on behalf of all others similarly situated, | * * * | |
| Plaintiff - Appellee, | * * | |
| v. | * * | |
| Carole Hillard, President of the Board of Charities and Corrections; Frank Brost, Vice President; Ted Spaulding, Member; D. A. Gellhoff, Member; Lyle Swenson, Member; James Smith, Executive Secretary; Herman Solem, Warden of the South Dakota State Penitentiary; sued individually and in their official capacities, | * * * * * * * * * * * | Appeal from the United States District Court for the District of South Dakota. |
| Defendants - Appellants. | * | |

_____

Submitted:  December 14, 2001

Filed:  September 11, 2002

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The Cody class[1] in this long-running prison civil rights litigation seeks attorneys' fees for counsel's work that culminated in a private settlement agreement dismissing the case without prejudice. Because the class had earlier obtained a consent decree lasting more than a decade, and because the parties' earlier practice had been for the defendants to pay the class's legal fees, the district court[2] awarded fees. The State appeals, and we affirm.

I.

The class members are South Dakota prisoners. Defendants are that state's main prison officials, whom we refer to as the State. In 1980 the class sued under 42 U.S.C. § 1983 to challenge conditions of confinement in several South Dakota prisons as violative of the Eighth and Fourteenth Amendments. After a bench trial, the district court held that numerous conditions in the prison system were unconstitutional. Cody v. Hillard, 599 F. Supp. 1025 (D.S.D. 1984). In July 1985, the parties entered into a consent decree that set out remedies for many of the violations found by the court. The decree addressed prison environmental conditions, fire safety, medical and psychological care, and prisoners' access to the courts, among other subjects. The decree recited that its remedial provisions were "fairly supported by the evidence."

In the years that followed, the State paid attorneys' fees to the class on multiple occasions beginning at least as early as 1985. The State did not dispute the class's entitlement to fees, though the parties sometimes negotiated the reasonableness of particular fee and expense requests.

_____

[1] Class representative William Cody also proceeds here individually, and is represented by the same counsel as the class.

[2] The Honorable Lawrence L. Piersol, Chief United States District Judge for the District of South Dakota.

The court held evidentiary hearings in 1987 and 1992 to monitor the State's compliance with the consent decree. After the 1987 hearing the court entered a supplemental order outlining procedures to identify "deficiencies in compliance." After the 1992 hearing the court found that the State had failed to comply with the decree in certain respects relating to sanitary conditions in the prison and inmate fire safety. It entered supplemental remedial orders.

On April 16, 1996, the State, arguing that it was now in substantial compliance, moved under Fed. R. Civ. P. 60(b) to dissolve the consent decree and supplemental orders. The class opposed the motion. After submissions, but without an evidentiary hearing, the district court entered a two-paragraph order terminating the decree. The class appealed. We remanded, holding that the district court's order had not provided a sufficient factual or legal basis to explain its decision. Cody v. Hillard, 139 F.3d 1197, 1199-1200 (8th Cir. 1998). We noted that the record suggested "there [we]re still at least some violations of the [consent] decree." Id. at 1199.

After remand, before the district court entered any further ruling, the parties entered into a settlement agreement stipulating that the case would be dismissed without prejudice. Most of the agreement consists of promises by the State to take specific steps to improve prison conditions. The agreement contains no provision expressly discussing attorneys' fees.

The district court approved the settlement agreement on February 17, 2000. Cody v. Hillard, 88 F. Supp. 2d 1049 (D.S.D. 2000). Shortly thereafter, the class moved for an award of fees for the work its counsel had done since December 1, 1995. Over the State's opposition, the district court awarded most of the fees sought. The court held that the initial litigation had established the class's status as prevailing parties under 42 U.S.C. § 1988 (2000), entitling them to attorneys' fees for work done to enforce the relief ordered in the consent decree. The court further held that the work done by class counsel in monitoring the decree, resisting the State's motion to

vacate it, and negotiating the settlement agreement upon remand was inextricably intertwined with the initial litigation. Finally, the court held that awarding fees did not violate the Prison Litigation Reform Act of 1996. The court applied the Prison Litigation Reform Act's hourly rate caps to the work done after the Act's effective date, and calculated a final fee award of $106,877.74.

The State appeals this award. It presents the same arguments it raised below: (1) that with respect to most of the work at issue here, the class was not a "prevailing party" under 42 U.S.C. § 1988; (2) that the award was contrary to the Prison Litigation Reform Act, which limits fees not "directly and reasonably incurred" in proving a violation, see 42 U.S.C. § 1997e(d)(1)(A) (2000); and (3) that the class waived any right to seek attorneys' fees by entering into a settlement agreement silent about fees. We consider each argument in turn.

## II.

Under 42 U.S.C. § 1988, district courts may award attorneys' fees to the "prevailing party" in suits brought under 42 U.S.C. § 1983 and other civil rights statutes. A plaintiff who prevails under a statute covered by § 1988 is normally entitled to fees. Wray v. Clarke, 151 F.3d 807, 809 (8th Cir. 1998). We review legal issues relating to fee awards de novo, the awards themselves for abuse of discretion. Jenkins v. Missouri, 127 F.3d 709, 713-14 (8th Cir. 1997).

The Supreme Court recently clarified the meaning of "prevailing party" in Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001). That case held that a plaintiff must secure a "judicially sanctioned change in the legal relationship of the parties" to qualify as a

prevailing party.  Id. at 605.[3]  Buckhannon affirmed that a plaintiff who obtains either an enforceable judgment on the merits or a court-ordered consent decree has established the required judicially sanctioned change in legal relationship, and so is a prevailing party.  Id. at 604.

Here, the class obtained a court-ordered consent decree which governed the operation of the prison for twelve years.  This was clearly a "judicially sanctioned change" in the parties' relationship that conferred prevailing party status on the class under Buckhannon.  Id. at 605.

Nevertheless, that a plaintiff has once established prevailing party status does not make all later work compensable.  Compensability is subject to several limitations.  First, the award of fees should take into account the degree of a plaintiff's success in the case as a whole.  Jenkins, 127 F.3d at 718.  Second, an earlier established prevailing party status extends to postjudgment work only if it is a "necessary adjunc[t] to the initial litigation."  Id. at 716.  Work that is more "like a new, separate lawsuit" requires a fresh determination of entitlement to fees.  The test is whether the later issues litigated were "inextricably intertwined with those on which the plaintiff prevailed in the underlying suit."  Id. at 717.  Third, plaintiffs cannot over-litigate.  Postjudgment litigation, like all work under the fee-shifting statutes, must be reasonable in degree.  Hensley v. Eckerhart, 461 U.S. 424, 433-34

---

[3] The claims before the Supreme Court in Buckhannon involved the "prevailing party" provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990.  However, Buckhannon's analysis of the meaning of "prevailing party" was general.  The Court stated that it was interpreting "a legal term of art," id. at 603, employed "in numerous statutes in addition to those at issue here," id. at 602 (citing 42 U.S.C. § 1988).  We agree with our sister circuits that Buckhannon applies broadly to fee-shifting statutes that employ the "prevailing party" language.  See, e.g., Richardson v. Miller, 279 F.3d 1, 4 (1st Cir. 2002); New York State Fed. of Taxi Drivers, Inc. v. Westchester County Taxi and Limousine Comm'n, 272 F.3d 154, 158 (2d Cir. 2001).

(1983). "[S]ervices that were redundant, inefficient, or simply unnecessary are not compensable." Jenkins, 127 F.3d at 716.

It is helpful to divide the period of time for which the class seeks fees into three phases. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 549 (1986) (describing analysis by phases as "useful in protracted litigation"). In the first phase, the class seeks a small amount of fees for monitoring the State's compliance with the consent decree after December 1, 1995. This phase ended when the State filed its motion to dissolve the decree under Rule 60(b) on April 16, 1996. The second phase consists of the class's litigation before the district court and this court in opposition to the motion to dissolve. It culminates in our remand order of March 27, 1998, Cody v. Hillard, 139 F.3d 1197 (8th Cir.). Finally, the third phase is work done after the remand to negotiate and secure approval of the private settlement agreement. The district court approved the settlement on February 17, 2000, and this phase ends with the filing of the class's petition for fees on March 15, 2000.

One of the State's arguments against prevailing-party status applies to the entire period at issue. The district court's 1997 order said it "vacated" the consent decree and remedial orders in the case, rather than saying it "terminated" them. Some courts have expressly distinguished these terms. In construing the automatic termination provisions of the Prison Litigation Reform Act, the First Circuit stated that "'terminate' means 'to put an end to' or 'to end,' whereas 'vacate' means 'to annul' or 'to render . . . void.' " Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 662 (1st Cir. 1997) (internal citation omitted) (quoting Black's Law Dictionary 1471, 1548 (6th ed. 1990)). The court thought this distinction "may well possess practical significance" in the context of prison civil rights litigation. Id. "While terminating a consent decree strips it of future potency," it observed, "the decree's past puissance is preserved. . . . Vacating a consent decree, however, wipes the slate clean . . . and, indeed, cast[s] a shadow on past actions taken under the decree's imprimatur." Id. Citing Rouse, the State argues that because the district court said

-6-

"vacate," its order wiped away the earlier existence of the consent decree, depriving the class of its prevailing-party status, which is based on the decree.

We are reluctant to consider this argument since it was not clearly articulated until the State's reply brief. See Akeyo v. O'Hanlon, 75 F.3d 370, 374 n.2 (8th Cir. 1996). Assuming it is proper to address the argument, we reject it. Our own most recent opinion in this case described the order as a "decision to terminate jurisdiction over a consent decree," and analyzed it accordingly. Cody, 139 F.3d at 1199. Quite apart from our choice of words, it is facially clear from the order that it was a termination order, of prospective effect. It recited that "the consent decree has served its purposes and is no longer needed in order to serve the public interest." Id. (emphasis added). The order added that the class had asked the court "to continue its jurisdiction," but that "in the absence of ongoing substantial violations, the Court declines the invitation." See id. None of this suggests that the district court held the decree to have been void from the start. Rather, the court held only that it need not be extended into the future. Hence the order did not "cas[t] a shadow on past actions" under the decree, Rouse, 129 F.3d at 662, or nullify the class's prevailing-party status.

The State does not otherwise dispute that class counsel's activity in the first of the three phases was compensable under prevailing-party case law. A district court may award fees to a prevailing party for reasonable postjudgment monitoring. Association for Retarded Citizens of North Dakota v. Schafer, 83 F.3d 1008, 1010-11 (8th Cir. 1996); see Mills v. Freeman, 118 F.3d 727, 733-34 (11th Cir. 1997). The class's considerable success in the litigation as a whole supports a fee award in this phase. The parties do not dispute the district court's assessment of reasonable fees for the particular steps class counsel took during this time. We thus uphold the award for this phase without further discussion.

The State does argue, however, that the class members fail to qualify as prevailing parties with respect to the second and third phases, which begin with the

-7-

State's motion to vacate the decree. The State maintains that this part of the litigation was not "inextricably intertwined" with the constitutional violations recognized in the class's consent decree, because the settlement agreement the parties finally entered into after remand addressed issues not contained in the decree. Hence the class cannot claim fees unless it "prevailed" anew on these issues under Buckhannon's standards. Securing the settlement agreement, the State further argues, was not enough to do this.

We reject the State's contention with respect to the second phase, resisting the motion to vacate. We have held before that work done to defend a remedy for a constitutional violation is inextricably intertwined with the litigation that yielded that remedy. See Jenkins, 127 F.3d at 717-18; Schafer, 83 F.3d at 1011. The fact that plaintiffs did not prevail before the district court in this phase of litigation does not deprive them of fees. When a remedial consent decree is threatened, "plaintiffs' counsel [are] under clear obligation to make the defensive effort." Id. (quoting Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990)). We have also held that as long as a plaintiff's litigation to protect a remedy does not rise to the level of overkill, "even largely unsuccessful defensive efforts may be compensable." Schafer, id. at 1011-12; see Plyler, 902 F.2d at 280-81 (awarding full compensation for plaintiffs' largely unsuccessful opposition to attempt to modify consent decree; work was "essential to the preservation of the integrity of the consent decree as a whole"). Here, the class achieved partial success in this phase by winning a remand from this court. The State does not contend that they engaged in excessive litigation, nor would the record support this view. We therefore hold that the district court's award of fees for class counsel's work before the district court and this court during the second phase was consistent with the "prevailing party" requirement, and a permissible exercise of the court's discretion.

Similar reasoning justifies compensating class counsel's activity in the third phase, negotiating the settlement agreement after remand. The settlement

agreement's provisions correspond to the more general provisions of the original consent decree and the supplemental remedial orders. As the district court earlier observed, the agreement

> contain[s] more specific language than is found in the 1985 Consent Decree. For example, the Consent Decree provides that defendants "shall provide proper medical screening for newly admitted inmates" while the Settlement Agreement specifies diagnostic and infection control procedures consistent with Center for Disease Control guidelines. In addition, the Consent Decree states that "adequate ventilation" must be provided in the West Hall shower, while the Settlement Agreement specifies that defendants shall provide at least ten air exchanges per hour.

Cody, 88 F. Supp. 2d at 1059. In addition to the examples given by the district court, the settlement agreement's provisions dealing with fire safety inspections, plumbing and ventilation maintenance, the storage of food and combustible materials, and initial medical screening of prisoners for tuberculosis likewise implement more general commands on these subjects in the consent decree. Similarly, the agreement's provision for chemical disposal in the prison wheelchair shop corresponds to the consent decree's requirement that adequate ventilation be maintained in the prison shops. We agree with the district court that the issues dealt with by the agreement are "inextricably intertwined" with the issues in the consent decree. Thus, class counsel's work on all three phases is compensable under the general fee-shifting framework.

III.

Because the class members are prisoners, their civil rights suit is also subject to the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321-1371, or PLRA, which imposes special limitations on fee awards. It provides:

> (1) In any action brought by a prisoner who is confined to any jail, prison or other correctional facility, in which attorney's fees are

authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent that –

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under [42 U.S.C. § 1988]; and

(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1) (2000). The State argues that this provision bars any award of fees for the work done by class counsel after March 13, 1997, when the district court entered its order vacating the consent decree. The State claims that because the work after this event yielded only a private settlement agreement, it was not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," § 1997e(d)(1)(A), and so is not compensable.

To evaluate this argument we must interpret § 1997e(d)(1), which, like other parts of the PLRA, "is not a paragon of clarity." Rouse, 129 F.3d at 654. The language of subsection (B)(ii) envisions that fees will sometimes be available for legal work that "enforc[es] . . . relief" ordered for constitutional violations. Yet (B)(ii) is connected by an "and" to subsection (A), which authorizes only fees that are "incurred in proving" a violation. Read in isolation, subsection (A) might be thought to forbid any fees for legal work done to enforce previously established relief. One would not ordinarily say that a lawyer performing such work is "proving" a violation.

Statutes are to be interpreted as a whole, however. United States v. Talley, 16 F.3d 972, 976 (8th Cir. 1994). In particular, courts should not interpret one provision

"in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous." United States v. Fiorillo, 186 F.3d 1136, 1153 (9th Cir. 1999) (quotation marks omitted). Here, subsection (A) and subsection (B)(ii) are flatly inconsistent unless (A) permits some fee awards for enforcement work, thus allowing some effect to (B)(ii).

A reasonable reading of the statute accomplishes this. Under the PLRA, attorneys' fees can be awarded in a prisoner civil rights case only if the prisoner "prov[es] an actual violation of . . . rights" protected by a relevant statute. § 1997e(d)(1)(A). Once a violation has been proven, later work is compensable if it is "directly and reasonably incurred in enforcing the relief ordered" for the violation. § 1997e(d)(1)(B)(ii).[4] Accord Webb v. Ada County, 285 F.3d 829, 834-35 (9th Cir. 2002). See also Martin v. Hadix, 527 U.S. 343, 353, 360 (1999) (affirming fee award under PLRA for postjudgment monitoring, while reducing award in accordance with PLRA's hourly rate cap; describing § 1997e(d)(1) in dictum as permitting awards for fees " 'directly and reasonably incurred' in the suit, and . . . 'directly and reasonably incurred in enforcing' the relief ordered."). The PLRA, so interpreted, permits fees for the work at issue here. We divide the period into three phases for analysis, as we did in Part II supra.

The first phase is routine monitoring prior to the filing of the state's motion to vacate. This work was performed before the PLRA's effective date of April 26, 1996, so the statute does not apply to it. Hadix, 527 U.S. at 347.

The second phase is the class's litigation from April 16, 1996 to March 27, 1998, opposing the motion to vacate. The PLRA governs most of this work.

---

[4] Enforcement work under subsection (B)(ii) is not governed by subsection (B)(i) (which is connected to (B)(ii) by an "or"), so the PLRA does not require courts to reduce fees for enforcing relief in proportion to the relative success of the claims the plaintiff originally asserted.

However, this work satisfies the PLRA's requirements. The class members "prov[ed] . . . actual violation[s] of [their] rights" at the start of the litigation by obtaining a bench verdict in their favor and a consent decree. Cf. Siripongs v. Davis, 282 F.3d 755, 758 (9th Cir. 2002) (holding that prisoner was not eligible for fees under § 1997e(d)(1)(A) when district court issued only a temporary restraining order and never finally adjudicated the question of whether prisoner's rights were violated). The district court's remanded order vacating the decree did not wipe the slate clean, requiring the class to prove a new violation from scratch, as the State argues. The order ended the prospective effect of the consent decree but did not deem it void from the start. Hence it did not change the fact that the class members had proven actual violations of their rights.

Awarding fees is thus authorized to the extent that class counsel directly and reasonably incurred them in enforcing the relief ordered for the violations. § 1997e(d)(1)(B)(ii). There is little precedent applying this requirement. One authority states: "The implication of the provision . . . is that only services calculated to enforce, by noncompliance or contempt motion, for example, the judgment and not merely to monitor the defendant's compliance with it, may be compensable under § 1988." 2 Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation § 2.8, at p. 39 (3d ed. 1997). We agree, but note that noncompliance and contempt motions are not the only types of work compensable under § 1997e(d)(1)(B)(ii). We hold that the class's effort to prolong the efficacy of the remedial decree was time spent "enforcing" that decree, and is fully compensable. Whether a plaintiff is pressing a contempt motion or defending against a motion to vacate, in both cases the point is to give effect to an existing remedy, suggesting that the two circumstances should be treated alike. The Supreme Court has suggested such an equivalence. In Delaware Valley, the Court considered a victorious plaintiff's counsel's participation in a separate administrative proceeding that threatened to curtail the remedy the client had gained in court. The Court held this administrative litigation to be compensable. It observed that "[p]rotection of the full scope of relief afforded by the consent decree

-12-

was . . . crucial to safeguard the interests asserted by [the plaintiff]," describing this effort as "enforcement of the decree." 478 U.S. at 558.

We also hold that the work in the third phase of litigation, securing the settlement agreement, is compensable under the PLRA. As discussed in Part II supra, the settlement agreement sets forth specific responses to constitutional violations that were acknowledged in the trial court's decision and the consent decree. It is reasonable to regard the work class counsel did to secure these parts of the agreement as work "incurred in enforcing" the decree. § 1997e(d)(1)(B)(ii).

IV.

The State's final argument, applicable to all three phases of class counsel's work, is that the class waived its right to seek fees by entering into the private settlement agreement. As support the State cites Young v. Powell, 729 F.2d 563 (8th Cir. 1984), and Wray v. Clarke, 151 F.3d 807 (8th Cir. 1998), in which we held that civil rights plaintiffs had waived fees by entering into settlement agreements lacking a fees provision.

Young was an employment discrimination suit and Wray a prisoner civil rights suit, but their procedural facts were the same. In both cases the parties settled before trial and the plaintiff obtained no consent decree. The parties entered into a settlement agreement that purported to resolve all disputed issues and said nothing about plaintiff's entitlement to attorneys' fees. Young, 729 F.2d at 565; Wray, 151 F.3d at 809. We construed the agreements as excluding a fee award. Young, 729 F.2d at 566-67; Wray, 151 F.3d at 809. In Young we stated generally that "[i]f a settlement does not resolve all issues in a case, the parties should not stipulate to a dismissal without reserving the unresolved issues or in some appropriate way indicating their intent as to such issues." 729 F.2d at 567 n.3. However, we emphasized that "[t]he case before us [did] not involve a situation wherein a

-13-

settlement was finalized by a consent decree." Id. at 566 n.1 (citing Maher v. Gagne, 448 U.S. 122, 124 (1980)).

Wray and Young imply that if the parties to a civil rights litigation enter into a settlement agreement before entry of an enforceable judgment or consent decree, and the agreement purports to resolve all issues in the case, then it will be presumed to exclude an award of attorneys' fees to plaintiff unless the parties expressly provide to the contrary. This rule has added force after Buckhannon, since that case clarifies that a plaintiff is rarely, if ever, legally entitled to court-awarded fees unless he or she has gained a consent decree or judgment.

However, no presumption against fees applies here. The settlement we interpret was reached after the class won a consent decree, clearly establishing its status as a prevailing party. In addition, the agreement here, unlike the agreements at issue in Wray and Young, nowhere purports to resolve all disputed issues. We must therefore determine the parties' intent from other features of the agreement. We analyze settlement agreements according to general contract law principles. Gilbert v. Monsanto Co., 216 F.3d 695, 700 (8th Cir. 2000).

The class argues that the text of the agreement implicitly preserves its right to seek fees. One provision permits plaintiffs to inspect the South Dakota State Penitentiary for three years after the date of the agreement. It specifies that "[t]he cost of any such inspection will be borne by the plaintiffs." The class submits that this provision only makes sense against a background assumption that it would be compensated for the time and effort that its counsel put into the case. We agree that this provision tends to support the class's reading of the document. See Crowley v. Texaco, Inc., 306 N.W.2d 871 (S.D. 1981) ("Every effort should be made to give effect to every part of the contract . . . .").

This argument is at least sufficient to establish that the agreement is textually ambiguous with respect to fees. In such a circumstance the district court could properly consider extrinsic evidence of the parties' prior conduct, as it did. A course of dealing between the parties may explain or supplement an agreement's meaning in matters left ambiguous by its express language. See Swiden Appliance & Furniture, Inc. v. Nat'l Bank of S.D., E. Branch, 357 N.W.2d 271, 274-75 (S.D. 1984); 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.13, at pp. 307-09 (2d ed. 1998). The existence of a course of dealing is an issue of fact reviewed for clear error. Towers Hotel Corp. v. Rimmel, 871 F.2d 766, 770-71 (8th Cir. 1989).

The court held that the agreement permitted a fee petition after observing that the "defendants [have] ma[d]e periodic payments of attorney fees to plaintiffs over the course of twelve years." Mem. Op. at 9. This history further distinguishes the present case from Wray and Young, where no fees had ever been paid. The State responds that other extrinsic evidence in the record undermines the conclusion the district court drew from the parties' dealings. It cites a February 26, 1996, letter from the South Dakota Attorney General's office to the class's Washington, D.C. counsel, in which counsel for the State wrote: "As I indicated on the telephone, I question the need for continued monitoring in this matter and the attorney fees incurred as a result thereof." The State argues that this letter disputed the class's entitlement to fees for monitoring work. This argument is not persuasive. If anything, the letter reflects a realization that the State would be paying any attorneys' fees "incurred as a result" of the "continued monitoring" of the case. To the extent that the letter raises a dispute, the dispute relates only to the reasonableness of continued monitoring, not to the class's status as a prevailing party entitled to fees for work class counsel reasonably performed. Alternately, the district court could have reasonably interpreted the letter as evidence that the parties did not intend the settlement to resolve the disputed issue of fees one way or the other – which would still permit the class to seek fees.

The State also points to a letter of May 14, 1997, shortly after the district court's termination order, in which class counsel told the State that "we will delay our action on plaintiffs' attorneys' fees claim until the court of appeals has acted." This terse document sheds little light on the issues. At most it suggests that the State had reservations about the fees claim. Again, this would show only that the issue of fees was in dispute, not that it was resolved against the class by the agreement.

The district court's conclusion was consistent with the text of the agreement, and its interpretation of the extrinsic evidence was not clearly erroneous. There was no waiver of the right to seek fees.

For the foregoing reasons, we affirm the district court's order awarding the class $106,877.74 in attorneys' fees.

A true copy.

        Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.