# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2374

_____

Douglas Skokos; Tim H. Chapman,     *
   *
       Appellants,    *    Appeal from the United States
   *    District Court for the
     v.    *    Western District of Arkansas
   *
Bruce Rhoades, in his individual    *
capacity; City of Fort Smith, doing    *
business as Fort Smith Police    *
Department, a municipality; Steve    *
Tabor, Sebastian County Prosecutor,    *
in his offical capacity; Ed Smally,    *
FSPD, Officer Badge #4105; J. C.    *
Phillips, FSPD, Officer Badge #4083;    *
Paul Smith, Officer Badge #4188;    *
E. Mahan, FSPD, Officer Badge    *
#4215,    *
   *
       Appellees.    *

_____

Submitted: November 14, 2005
Filed: March 10, 2006

_____

Before ARNOLD, BEAM, AND RILEY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Douglas Skokos and Tim Chapman appeal the district court's[1] dismissal of their action, which was brought under 42 U.S.C § 1983. Mr. Skokos also appeals the denial of his request for attorney's fees under 42 U.S.C. § 1988. For the reasons stated below, we affirm.

I.

Mr. Skokos and Mr. Chapman each owned a business in Fort Smith, Arkansas, in which he had on the premises a so-called countertop machine, a device upon which customers could play up to seventy different electronic games. While most of those games were not games of chance, the machines did offer poker and blackjack. They did not pay out any winnings.

Defendant Bruce Rhoades, the prosecuting attorney for Sebastian County, Arkansas, sent out letters to several Fort Smith businesses, including those of plaintiffs, stating that their countertop machines violated Arkansas law. When the businesses did not remove the machines, Mr. Rhoades asked the local police to investigate. Relying on Mr. Rhoades's legal opinion that the machines violated Arkansas law, police seized Messrs. Skokos and Chapman's countertop machines from their businesses. These seizures were carried out without the issuance of any search warrants.

Mr. Skokos then brought the present action against the City of Fort Smith and Mr. Rhoades, seeking declaratory, injunctive, and compensatory relief. Soon thereafter, Mr. Rhoades commenced a forfeiture proceeding in state court, and the district court abstained from exercising its jurisdiction pending resolution of the state-court proceeding. The state trial court held that the countertop machines were not

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

illegal under Arkansas law, and the Arkansas Supreme Court, with two justices dissenting, affirmed the judgment. *State v. 26 Gaming Machines*, 356 Ark. 47, 145 S.W.3d 368 (2004).

With the forfeiture proceeding concluded, the parties returned to federal court. Once there, Mr. Skokos amended the complaint to add Mr. Chapman as a plaintiff and four individual police officers and a prosecutor, Steve Tabor, as defendants. After the complaint was amended, Messrs. Rhoades and Tabor asked the court to dismiss the claims against them. The district court largely granted this motion, holding that Mr. Skokos's claims against Mr. Tabor were moot and that any claims against Mr. Rhoades in his personal capacity either failed to state a claim or were barred by qualified immunity. Mr. Skokos then requested the court to award him attorney's fees under § 1988 for the costs that he incurred in the state forfeiture proceeding. The court denied the motion on the ground that while Mr. Skokos had prevailed in state court, none of his federal claims was successful. Because of this, the court held, Mr. Skokos was not a "prevailing party" for § 1988 purposes.

The City of Fort Smith and the individual police officers (collectively referred to as the city defendants) then moved for summary judgment. The court granted the motion, holding that the officers had probable cause to believe that the countertop machines were contraband. Because the machines were found in plain view, the court reasoned, the police were justified in seizing them without first obtaining a warrant. The court also held that the city defendants had not violated the plaintiffs' liberty interests in running legitimate businesses because the police officers did not possess an intent to injure and their conduct did not shock the conscience.

II.

A.

Messrs. Skokos and Chapman argue that the seizure of their countertop machines violated their fourth amendment rights. Since Mr. Rhoades was acting in

an investigatory capacity in advising the police that the machines were illegal under Arkansas law, he is eligible only for qualified immunity, not absolute prosecutorial immunity. *See Anderson v. Larson*, 327 F.3d 762, 769 (8th Cir. 2003). Mr. Rhoades is entitled to qualified immunity if his legal opinion was reasonable when made. Like a police officer, a prosecutor is "entitled to make a reasonable interpretation of the law he is obligated to enforce." *Cf. Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996); *see also Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989).

While the Arkansas Supreme Court ultimately rejected Mr. Rhoades's position, we believe that his interpretation of Arkansas law was reasonable. When Mr. Rhoades first rendered his opinion, the Arkansas Supreme Court had not yet ruled on the precise issue involved in this case; Mr. Rhoades therefore looked to analogous, if factually different, cases. In one case, the Arkansas Supreme Court had held that a machine could be a gaming device *per se* even if it offered no payout. *See Stanley v. State*, 194 Ark. 483, 483-85, 107 S.W. 2d 532, 533-34 (1937). In another case, the court held that video poker machines were illegal gaming devices. *Sharp v. State*, 350 Ark. 529, 530-31, 88 S.W.3d 848, 849 (2002). In addition, there is statutory language that exhorts judges to interpret the gaming laws broadly so that offenders cannot evade their effect through technological changes. Ark. Code Ann. § 5-66-101. Furthermore, when Mr. Rhoades's legal interpretation was argued to the Arkansas Supreme Court, two justices agreed with it. *See 26 Gaming Machines*, 356 Ark. at 57-58, 145 S.W.3d at 375 (Thornton, J., dissenting, joined by Glaze, J.). Given all of this, we hold that Mr. Rhoades's interpretation of the law was manifestly reasonable and that he is therefore entitled to qualified immunity on this claim.

B

The plaintiffs also contend that the officers' seizures were unreasonable because they seized the items without first obtaining any warrants. As Messrs. Skokos and Chapman point out, there is a general preference in the law for

-4-

search warrants, *see United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005), and the failure to secure a warrant before making a seizure will be excused only if it qualifies for a specific exception to the warrant requirement. *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002)**.** The city defendants argue that the officers needed no warrant because their actions fit within the so-called plain-view exception to the warrant requirement.

The plain-view exception permits an officer to make a warrantless seizure when he or she does not violate the fourth amendment in reaching the place from which the object can be viewed, the object's incriminating character is "immediately apparent," and "the officer has a lawful right of access to the object itself." *United States v. Collins*, 321 F.3d 691, 694 (8th Cir. 2003) (internal quotations omitted), *cert. denied*, 540 U.S. 1076 (2003). All parties concede that the officers lawfully entered the plaintiffs' establishments and that they had lawful access to the countertop machines. The only question is whether the incriminating nature of the countertop machines was "immediately apparent."

The plaintiffs argue that the illegal nature of the countertop machines was not immediately apparent. They cite to both *Arizona v. Hicks*, 480 U.S. 321, 325 (1987), and *Minnesota v. Dickerson*, 508 U.S. 366, 378-79 (1993), for the proposition that a warrantless search may not be justified under the plain-view exception where the police must manipulate the object to verify that it is contraband. Messrs. Skokos and Chapman contend that because the machines were subjected to later testing, it was not immediately apparent to the officers that the machines were contraband. Such uncertainty, according to the plaintiffs, prevented the police from relying on the plain-view doctrine and caused the warrantless seizures to be unreasonable.

As the city defendants point out, however, the term "immediately apparent" does not really mean what it seems to say. The plaintiffs would have us require near certainty before a plain-view seizure could occur. But the Supreme Court has rejected

that proposition, and in fact has said "that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary." *Texas v. Brown*, 460 U.S. 730, 741 (1983). For an item's incriminating character to be immediately apparent, the police merely need probable cause to believe that the item is contraband. *Id*. at 741-42. Once that probable cause exists, a plain-view seizure of the item is permissible.

Here, the police had probable cause to believe that the countertop machines were contraband. They relied on Mr. Rhoades's legal opinion, which, as we noted above, was reasonable when offered. When the officers saw machines meeting Mr. Rhoades's criteria, therefore, they were justified in seizing them as contraband.

### III.

The plaintiffs also argue that the district court erred in concluding that they failed to state a claim for the denial of substantive due process under § 1983 based on their allegations that Mr. Rhoades and the city defendants seized the countertop machines and made false statements to the press regarding them and their businesses. These actions, they say, impaired their ability to operate legitimate businesses and harmed their reputations. Relying on *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 701-02 (5th Cir. 1991) (per curiam), Messrs. Skokos and Chapman maintain in their brief that "[f]alse statements made by a state actor accompanied by an infringement of some other interest ... is actionable under § 1983."

To make out a substantive due-process violation, the plaintiffs must show that the defendants' actions deprived them of their liberty interests in running legitimate businesses. Not all conduct by a state actor that injures a private party, of course, can amount to a due-process violation. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). For the conduct to amount to a constitutional deprivation, the state actor's conduct must be egregious, *Bonebrake v. Norris*, 417 F.3d 938, 942 (8th Cir.

2005), or, in other words, " 'arbitrary, or conscience shocking, in a constitutional sense.' " *Lewis*, 523 U.S. at 847 (*quoting Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992)). But what conduct is egregious? As *Lewis* states, a court must engage in "an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. The decision is based, in part, on whether the officials were forced to make an instantaneous decision, or whether they instead had time to deliberate and choose their course of action. See id. at 852-54.

In challenging the district court's decision, the plaintiffs contend that the district court erred by requiring the defendants to have had an "intent to injure" when "deliberate indifference" was enough to support the claim. But we need not resolve that question because, having reviewed the record, we are drawn inexorably to the conclusion that neither Mr. Rhoades nor the Fort Smith police, in seizing the machines and commenting on those seizures to the press, acted with deliberate indifference. As we stated above, Mr. Rhoades's legal opinion about the legality of the countertop machines was reasonable when made, and the officers' seizures did not violate the fourth amendment. For conduct to amount to deliberate indifference, the state actor must have subjectively understood his actions as creating a substantial risk of a constitutional deprivation. *See Hart v. City of Little Rock*, 432 F.3d 801, 806 (8th Cir. 2005). Here, however, there is no evidence that Rhoades or the officers believed that their actions would violate the plaintiffs' constitutional rights.

IV.

Mr. Skokos also appeals the denial of his motion for attorney's fees. He argues that because his victory in state court led to the return of his countertop machine, he is a "prevailing party" for § 1988 purposes and is therefore entitled to such fees. *See* 42 U.S.C. 1988(b). We review this question *de novo*. *See Cody v. Hillard*, 304 F.3d 767, 772 (8th Cir. 2002).

We have held that a plaintiff who loses on the merits of his federal claims is not a "prevailing party" for § 1988 purposes, just because he prevails on a related pendent state-law claim. *See John T. v. Marion Indep. Sch. Dist.*, 173 F.3d 684, 689 (8th Cir. 1999). Sometimes, however, such a plaintiff can be a prevailing party. For one thing, the legislative history of § 1988 indicates that where a federal court grants relief on a state-law claim to avoid a constitutional issue, it may award attorney's fees if the constitutional claim was "substantial" and both the constitutional and the state-law claims arose out of a "common nucleus of operative fact." *See* H.R.Rep.No. 94-1558, at 4 n.7. Federal courts, moreover, may award plaintiffs attorney's fees for state-court proceedings that are essential to their federal claims. The Supreme Court, for instance, has permitted Title VII plaintiffs to recover attorney's fees for state administrative proceedings that they were required to exhaust. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71 (1980).

Mr. Skokos argues that his case qualifies for one of these exceptions. He contends that his case is like *Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47 (1st Cir. 1986), where the district court awarded attorney's fees to a plaintiff who had prevailed before the state supreme court. In that case, the plaintiffs filed a § 1983 action in federal court alleging that a state official's order requiring a school district to fund a pupil's attendance at a religious high school violated the establishment clause. *Pontarelli*, 788 F.2d at 48-49. The district court, wishing to avoid deciding the case on constitutional grounds, certified a question to the state supreme court asking if the relevant state official correctly interpreted state law as requiring the funding. *Id.* at 49. Once the state court agreed to hear the case, the federal court abstained under *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 500-01 (1941). The state supreme court held that the state official misinterpreted state law and that the funding was not required. *Pontarelli*, 788 F.2d at 49-51.

Once the state-court proceeding was complete in *Pontarelli*, the district court dismissed the plaintiffs' constitutional claims as moot. It awarded attorney's fees to

the plaintiffs, though, because the answer to the certified question had allowed the district court to avoid deciding the constitutional issue. *Id.* at 50-51. Although the plaintiffs prevailed only in state court, the First Circuit held that the issue decided by the state court was "in litigation" in the federal case "because the district court determined that under the abstention doctrine ... the issue had to be decided by the [state supreme court] before the federal court could reach the constitutional issues in the case [before it]." Id. at 51. We believe that by accepting the state supreme court's answer to the certified question the federal court in *Pontarelli* had in essence decided the state-law claim. We recognized as much when we said that the "federal court [in *Pontarelli*] actually settled the case, merely relying on the state court for assistance." *Quinn v. Missouri*, 891 F.2d 190, 193 (8th Cir. 1989) (per curiam).

Despite Mr. Skoko's protestations, we believe that this case is unlike *Pontarelli*. Although, as in *Pontarelli,* Mr. Skokos received relief only on a state-law claim, our case differs from *Pontarelli* in two key respects. First, the state proceeding here was not a necessary part of the § 1983 litigation. In *Pontarelli*, the district court forced the plaintiffs to litigate in state court as part of their § 1983 action. The district court here did not request the state court's aid and then push the plaintiffs to litigate in the state forum; rather, it was Mr. Rhoades who initiated the separate state forfeiture proceeding. Once the state action was underway, the federal court had to abstain in the nascent § 1983 action under *Younger v. Harris*, 401 U.S. 37 (1971). *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). It is incorrect, therefore, to consider the state forfeiture proceeding a necessary part of the larger federal litigation.

Second, in *Pontarelli*, once the state supreme court ruled on the state-law matter, the federal court no longer had to decide the constitutional issue. The federal court dismissed the case as moot because the resolution of the constitutional claims was no longer necessary. In this case, however, the Arkansas Supreme Court's decision did not moot Mr. Skokos's constitutional claims: The district court

dismissed the case not because there were no live claims, but because it considered those claims to be without merit. *Cf. Reel v. Arkansas Dep't of Correction*, 672 F.2d 693, 698 (8th Cir. 1982). Like the plaintiffs in *Quinn*, 891 F.2d at 194, Mr. Skokos has "gained nothing from [his] federal court suit." He is therefore not a prevailing party for the purposes of § 1988.

## V.

For the reasons stated above, we affirm the district court.

_____