NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0758n.06
Filed: October 12, 2006

No. 05-2057

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DONNA MCCUISTON, RICK MIAZGA, AVA
MILLER,

    Plaintiffs-Appellants,

       v.

JAMES P. HOFFA, JR.; C. B. CONDER, aka "Doc"
Condor; INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL-CIO, a Labor Organization,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Michigan

_____/

**Before:**     **GUY, SUTTON, and ALARCÓN[*], Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**     Plaintiffs Donna McCuiston, Rick Miazga,

and Ava Miller appeal from the denial of their motion seeking $159,225.23 in attorney fees

and costs following entry of a Stipulated Consent Judgment declaring that plaintiffs "shall

have the right to observe the counting of ballots on any future referenda approving a contract

in which [p]laintiffs are eligible to vote." This action, brought by local union members, arose

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

out of the alleged miscounting of ballots in the July 2003 referendum on the renegotiated

Michigan Office Workers Supplemental Agreement (Michigan Supplement). Plaintiffs sued

the International Brotherhood of Teamsters (IBT), IBT President James P. Hoffa, Jr., and

IBT Carhaul Director C.B. Conder, alleging violation of equal voting rights under the Labor-

Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1); breach of the

IBT constitution in violation of the Labor Management Relations Act (LMRA), 29 U.S.C.

§ 185; and breach of the duty of fair representation in violation of the National Labor

Relations Act  (NLRA), 29 U.S.C. § 159(a).

There being no applicable fee-shifting statute, plaintiffs' request for attorney fees and

costs was made under the "common benefit" exception to the general rule disfavoring the

allowance of attorney fees to prevailing parties.  *Aleyska Pipeline Serv. Co. v. Wilderness

Soc'y.*, 421 U.S. 240, 257-58 (1975) (discussing exceptions to American Rule).  The common

benefit theory has been applied to claims arising under Title I of the LMRDA.  *Hall v. Cole*,

412 U.S. 1, 5 (1973); *Argentine v. United Steelworkers of Am.*, 287 F.3d 476, 489 (6th Cir.

2002).  Although defendants contested whether plaintiffs were "prevailing" and whether

there was a "common benefit," the district court did not reach those issues and neither do we.

Instead, the issue before us is whether the district court erred in finding that the

plaintiffs waived their claim for attorney fees by agreeing in the Stipulated Consent Judgment

that: "This is a final order of the court, disposing of all remaining claims in this action."  The

district court found that this language, drafted by the judge himself during a settlement

conference and stipulated to by counsel, was intended as a "settlement in full" of all

claims—including any claim to attorney fees. *McCuiston v. Conder*, 385 F. Supp. 2d 617 (E.D. Mich. 2005). After review of the record and the arguments presented on appeal, we affirm.

## I.

The Teamsters' collective bargaining agreement (CBA) consists of a national master agreement along with the various supplemental agreements that must each be ratified before the CBA may be implemented. The 2003 negotiations resulted in a three-year National Master Automobile Transporters Agreement (NMATA) and a series of supplemental agreements, one of which was the 2003 Michigan Office Workers Supplemental Agreement (Michigan Supplement). When the referenda were held by mail in June 2003, the NMATA and all of the supplemental agreements were ratified except for the Michigan Supplement. The Michigan Supplement was promptly renegotiated by the IBT and submitted to the local members, 16 in all, who were eligible to vote. Conder directed that the four affected local unions hold meetings with eligible voters to be followed immediately by an "in person" secret ballot. The ballots and a list of voters were to be shipped by overnight delivery to the IBT Carhaul Division. At least one local union counted the votes before sending the ballots to Washington D.C., and at least one other local, Local 299, did not.

On August 1, 2003, the IBT announced that the NMATA and each of the supplemental agreements had been ratified and that the new CBA was therefore in effect. James DeHaan, hired by the IBT as an independent election supervisor, certified that the Michigan Supplement had passed by a vote of eight to six. It turned out that the wrong

results were attached to the certification letter signed by DeHaan, and that DeHaan would later admit that he had no personal knowledge concerning the counting of the votes on the renegotiated Michigan Supplement. Plaintiffs concluded, after talking with other local union members, that the renegotiated supplement had actually been defeated. When internal union complaints produced no results, plaintiffs commenced this action in January 2004.

Defendants' several motions to dismiss were denied in orders entered in April, June, and September 2004. In early 2005, the district court granted in part and denied in part the defendants' motion for summary judgment. Although the correctness of those rulings is not before us, they set the stage for the settlement conference that followed. In particular, the district court found that plaintiffs had standing to seek injunctive relief with respect to all future referenda on which they were eligible to vote; but that plaintiffs could not recover compensatory damages because they were too speculative.

With respect to the alleged miscounting of votes, plaintiffs presented the sworn declarations of several union members attesting that they had voted "no" on the renegotiated supplement. Finding that those votes would have been sufficient to change the outcome of the referendum, there was a question of fact whether the Michigan Supplement was approved and therefore whether plaintiffs were injured by a miscount that bound them to an improperly ratified three-year contract.[1] Summary judgment was granted on the claims against Hoffa personally, but denied with respect to the claims against Conder and the IBT.

With the case postured for trial, the district court scheduled a settlement conference

---

[1]There seems to be no dispute that plaintiffs could not undo the 2003 CBA even if they were to prevail in this case.

and required that representatives with full authority to settle be in attendance. By all accounts, the district judge actively participated in the settlement discussions, determined that there was agreement, and drafted the two-sentence Stipulated Consent Judgment for approval of counsel. There is no dispute that the issue of attorney fees was not specifically discussed during the settlement conference. Nor was the issue of attorney fees the subject of any prior discussions or demands. The Stipulated Consent Judgment, executed and filed the same day, stated in full:

> Upon stipulation of all parties, the Plaintiffs in this case, Donna McCuiston, Rick Miazga, and Ava Miller, shall have the right to observe the counting of ballots on any future referenda approving a contract in which Plaintiffs are eligible to vote.

> This is a final order of the court, disposing of all remaining claims in this action.

> **IT IS SO ORDERED**.

Two weeks later, plaintiffs filed their motion seeking a total of $159,225.23 in attorney fees and costs. Defendants opposed the request on various grounds, including waiver, and plaintiffs filed a reply. Plaintiffs represented at that time that their attorney had intentionally "refrained" from mentioning the issue of attorney fees during the settlement conference. Defendants argued that before agreeing to settle their counsel had asked if the settlement would be "it," meaning the end of the litigation, and was led to believe that it would. The district court found, for the reasons set forth in the order entered on July 8, 2005, that the comprehensive language in the Stipulated Consent Judgment demonstrated the parties' intention to reach a settlement in full of all claims—including any claim to attorney

fees. Plaintiffs' motion was denied, and this appeal followed.

## II.

A consent judgment is a hybrid that is both a voluntary settlement agreement fully effective without judicial intervention, and a final judicial order that places the authority of the court behind the parties' compromise. *Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1148 (6th Cir. 1992). The consent judgment must be interpreted as a contractual agreement, albeit one that may be enforced or modified by the court. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975).

Interpretation of a consent judgment is a question of law subject to de novo review, while the underlying factual findings are reviewed for clear error. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371 (6th Cir. 1998). When reviewing the interpretation of a consent judgment by the same judge who crafted it, however, our review is more accurately described as "deferential de novo." *Id*. This is because few persons are in a better position to understand the meaning of the consent judgment than the district judge who oversaw the settlement discussions and drafted the language stipulated to by the parties. *Id*. at 371-72.

### A.     Importance of Fee Shifting

Plaintiffs begin with an impassioned argument about the importance of attorney-fee awards to the enforcement of union democracy laws. Plaintiffs explain that such cases can be time consuming and expensive to prosecute; typically involve equitable relief, or damages that are rarely substantial; and tend to be brought on behalf of individual union members with

limited financial resources. To be sure, plaintiffs illustrate the significance of fee-shifting to claims brought under the LMRDA and point to some of the same reasons that led the Supreme Court to find that allowing an award of attorney fees under the common benefit theory would be consistent with the purposes of the LMRDA. *Hall v. Cole*, 412 U.S. 1, 13 (1973). At the same time, unlike the statutory fee-shifting provisions of 42 U.S.C. § 1988, the authority to award fees under *Hall* arises under the equitable power of the courts to rectify the inequity of allowing other union members to share in a common benefit without sharing in the cost of attaining it. *Id*. at 6.

More importantly, to the extent plaintiffs are suggesting that these interests militate against waiver, the Supreme Court has held that even a prevailing civil rights plaintiff's eligibility for attorney fees under § 1988 may be waived in a settlement of the entire action. *Evans v. Jeff D.*, 475 U.S. 717, 731-38 (1986); *id*. at 731-32 ("while it is undoubtably true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it neither bestowed fee awards upon attorneys nor rendered them nonwaivable or nonnegotiable"). Similarly, the asserted importance of fee-shifting to the enforcement of union democracy laws does not prevent plaintiffs from waiving the right to seek attorney fees under *Hall*.

**B.      Express Waiver**

Analogizing a fee request under *Hall* to a petition for fees under § 1988, plaintiffs would have us follow the lead of other circuits that have placed the burden on defendants opposing a fee request to prove that the parties intended to release or waive a claim to fees

under § 1988. Some courts have held, in the interest of furthering the purposes of § 1988, that a defendant must negotiate an express waiver of the right to seek attorney fees under § 1988. *See, e.g., Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1200-01 (10 Cir. 1998); *Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695, 698 (9th Cir. 1989) (waiver may be established by clear language in settlement or, if ambiguous, from the surrounding circumstances). Other courts, taking a contrary position, have required that the plaintiff reserve the right to seek an award of fees. *See, e.g., Wray v. Clarke*, 151 F.3d 807, 809 (8th Cir. 1998); *Elmore v. Shuler*, 787 F.2d 601 (D.C. Cir. 1986); *Young v. Powell*, 729 F.2d 563, 567 n.3 (8th Cir. 1984) ("If a settlement does not resolve all issues in a case, the parties should not stipulate to a dismissal without reserving the unresolved issues or in some appropriate way indicating their intent as to such issues."). This court has not taken either approach.

In fact, in *Jennings v. Metropolitan Government of Nashville*, this court specifically rejected an approach that centered on the question of whether the parties had reached an explicit agreement on the issue of attorney fees. 715 F.2d 1111 (6th Cir. 1983). This court explained:

> The question more properly before the District Court was whether the parties intended the settlement to be a final disposition of all claims, rather than whether the parties intended to include attorneys' fees in the settlement. The distinction is important since it is not necessary for the parties to have reached a separate agreement on each aspect of the claim in order to have reached a settlement in full. With respect to whether the parties intended the settlement to dispose of all claims, the silence of the parties regarding attorneys' fees is not controlling.

*Id.* at 1114; *see also Toth v. UAW*, 743 F.2d 398, 406-07 (6th Cir. 1984) (full and complete

settlement of all claims included any request for attorney fees even though the issue of attorney fees was not specifically mentioned). In this case, the district court properly recognized that the dispositive issue was whether the parties intended their settlement to be a final disposition of all claims.

**C.    Consent Judgment versus Settlement Agreement**

Plaintiffs argue that because the settlement was formalized in a consent judgment, as opposed to a settlement agreement, the language stipulating that it was a "final order of the court, disposing of all remaining claims" did not encompass their "collateral" claim for attorney fees. Plaintiffs assert that this language has a specialized (and different) meaning in the context of a consent judgment because settlement agreements do not implicate the same concerns about finality as consent judgments. As we see it, the question is simply whether the parties intended their settlement, however formalized, to leave the claim for attorney fees unresolved or to constitute a settlement in full.

It is true, as plaintiffs observe, that a request for attorney fees presents collateral issues that are "not inherently or necessarily subsumed by a decision on the merits." *White v. N. H. Dep't of Employment Sec.*, 455 U.S. 445, 451 n.13 (1982). As a result, a decision on the merits will be "final" for purposes of appeal whether or not a request for attorney fees remains for adjudication. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988). Thus, a voluntary dismissal under Fed. R. Civ. P. 41(a) does not deprive the court of jurisdiction to consider the imposition of sanctions, costs, or attorney fees. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393-94 (1990); *Brown v. Local 58 Intern. Bhd. of Elec.*

*Workers*, 76 F.3d 762, 766-67 (6th Cir. 1996).

Plaintiffs point to our statement in *Brown*, a case brought under the LMRDA, that the plaintiffs did not have to reserve the right to seek attorney fees in voluntarily dismissing the action. *Id*. at 767. However, the issue in *Brown*, whether an express reservation of the court's jurisdiction was required, is separate from the question of whether the parties' settlement included any claim to attorney fees. *Accord Young v. Powell*, 729 F.2d 565, 566 (8th Cir. 1984) ("The decisions holding that a claim for attorney's fees is separable from the principal claim after a judgment on the merits do not hold that such a claim is not a disputed issue in the particular case.").[2]

Taking a different tack, plaintiffs argue that this court's decisions in *Jennings* and *Toth* are not controlling because neither case involved the interpretation of a consent judgment. However, nothing in either case suggests that the form of the settlement would have made a difference with respect to the issue of waiver. Conceding as much, plaintiffs rely on the Eighth Circuit's unexplained distinction between a settlement agreement and a settlement finalized by consent decree. *See Cody v. Hillard*, 304 F.3d 767, 778 (8th Cir. 2002); *Wray*, 151 F.3d at 809; *Young*, 729 F.2d at 566-67.

The court in *Young* observed in *dicta* that "[t]he case before us does not involve a situation wherein a settlement was finalized by a consent decree or wherein the parties

---

[2]The award of fees in *Brown* was nonetheless reversed because plaintiffs had not shown that they were prevailing parties under the so-called catalyst theory. The Supreme Court has since clarified that to be "prevailing," there must be a judicially sanctioned change in the legal relationship of the parties—such as a settlement agreement enforced through a consent decree. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001).

stipulated to a dismissal, reserving the question of attorney fees." 729 F.2d at 566 (footnotes omitted). No explanation was given for how or why a settlement by consent decree should be treated differently, and the cases cited in the supporting footnote actually address whether a plaintiff may be a prevailing party when a case has been settled by consent decree. *See, e.g., Maher v. Gagne*, 448 U.S. 122, 124 (1980); *see also id.* at 129 ("Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.").

As noted earlier, the court in *Young* declared that the parties to a settlement should not stipulate to dismissal without reserving any unresolved issues or indicating such an intention in some way. 729 F.2d at 567 n.3. In *Cody*, this holding was interpreted to create a presumption that a settlement of all claims precludes an award of attorney fees absent an express reservation to the contrary. Because of the distinction noted in *Young*, however, the court also found that no similar presumption would arise when a consent decree had been entered. The court explained as follows:

> *Wray* and *Young* imply that if the parties to a civil rights litigation enter into a settlement agreement before entry of an enforceable judgment or consent decree, and the agreement purports to resolve all issues in the case, then it will be presumed to exclude an award of attorneys' fees to plaintiff unless the parties expressly provide to the contrary. This rule has added force after *Buckhannon*, since that case clarifies that a plaintiff is rarely, if ever, legally entitled to court-awarded fees unless he or she has gained a consent decree or judgment.
>
> However, no presumption against fees applies here. The settlement we interpret was reached *after* the class won a consent decree, clearly establishing its status as a prevailing party. In addition, the agreement here, unlike the agreements at issue in *Wray* and *Young*, nowhere purports to resolve all disputed issues. We must therefore determine the parties' intent from other

features of the agreement.

*Cody*, 304 F.3d at 778. Nothing in these cases persuades us that the approach we adopted in *Jennings* should not apply when a settlement of all claims is formalized by consent judgment. Significantly, none of the Eighth Circuit cases actually involved the interpretation of a settlement finalized by consent judgment. In fact, *Cody* stands for the proposition that a presumption of waiver (which has not been adopted in this circuit) does not apply when a settlement agreement is preceded by a consent decree. Also, unlike this case, the settlement in *Cody* did not purport to dispose of all claims.

**D.      Intention of the Parties**

Finally, we review the district court's finding that the parties unambiguously intended to reach a settlement in full by stipulating that the consent judgment was a "final order of the court, disposing of all remaining claims in this action." The district judge, who participated in the settlement discussions and drafted the consent judgment, specifically ruled that "[t]his comprehensive language in the stipulated consent judgment demonstrates that the parties intended to reach a settlement in full." *McCuiston v. Conder*, 385 F. Supp. 2d 617, 619 (E.D. Mich. 2005). Although intent is a question of fact, it may be determined by the court when the record permits only one inference. *Jennings*, 715 F.2d at 1114.

A claim for attorney fees and costs was asserted in the complaint, but was not the subject of discussion at or prior to the settlement conference. The district court scheduled the settlement conference, and required that representatives with full authority to settle be in attendance. The terms of settlement were discussed and accepted, with no mention of the

plaintiffs' claim for nearly $160,000 in attorney fees and costs. While this meant that no separate agreement was reached on the claim for attorney fees, it did not prevent the parties from agreeing to a settlement in full. The Stipulated Consent Judgment executed by the parties awarded plaintiffs injunctive relief, included no monetary damages of any kind, and purported to dispose of "all remaining claims." Plaintiffs point to no circumstances, except for their purposeful silence on the issue, to suggest that anything less than a comprehensive settlement was reached in this case.

**AFFIRMED.**