$15,956 IN U.S. CURRENCY, David Wells, LeJohn Martin *v.* STATE of Arkansas

05-671 233 S.W.3d 598

Supreme Court of Arkansas
Opinion delivered April 6, 2006

*Terrence Cain*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. This is an appeal from a circuit court's order granting the State's petition for forfeiture of $15,956. Appellants, LeJohn Martin and David Wells, argue on appeal that the

circuit court erred in granting the petition for forfeiture because the money was not found in close proximity to an illegal substance. We affirm.

## I. Renewal of Motion to Dismiss

Before we address the merits of this appeal, we must address an issue raised by the court of appeals in its certification to us. The Arkansas Court of Appeals certified this case to us pursuant to Ark. Sup. Ct. R. 1-2(b)(5) because it perceived an apparent conflict in our case law regarding whether, following a civil bench trial, a person may challenge the sufficiency of the evidence on appeal if he did not renew his motion to dismiss on sufficiency at the close of the evidence. In a long line of cases, we have ruled that, in a non-jury trial, a party who does not challenge the sufficiency of the evidence does not waive the right to do so on appeal. *See Oates v. Oates*, 340 Ark. 431, 435, 10 S.W.3d 861, 864 (2000); *FirstBank of Arkansas v. Keeling*, 312 Ark. 441, 445, 850 S.W.2d 310, 313 (1993); *Bass v. Koller*, 276 Ark. 93, 96, 632 S.W.2d 410, 412 (1982). However, in *$735 in U.S. Currency v. State*, 364 Ark. 526, 222 S.W.3d 209 (2006), an appeal from a civil bench trial, we held that the appellant's argument regarding sufficiency of the evidence was not preserved for appeal where we could not determine "whether or not [she] renewed her motion for directed verdict at the close of all of the evidence." *Id.*

Here, appellants moved at the close of the State's case to dismiss the petition for forfeiture for lack of sufficient evidence. The circuit court denied the motion, and appellants proceeded with their case. Appellants did not renew their motion to dismiss at the close of all of the evidence, and the circuit court granted the petition for forfeiture. Appellants' point on appeal is that the evidence at trial was insufficient to prove the statutory elements necessary for forfeiture. Therefore, the issue raised by the certification is whether appellants' sufficiency-of-the-evidence argument was preserved for appeal where they did not renew their motion to dismiss at the close of all of the evidence. We hold that it was.

Ark. R. Civ. P. 50(e) states as follows:

(e) *Appellate Review.* When there has been a *trial by jury*, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a

waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. If for any reason the motion is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

(Emphasis added.) In *Bass v. Koller*, 276 Ark. 93, 96, 632 S.W.2d 410, 412 (1982), we held that Rule 50(e) did not apply to non-jury trials.[1] Our holding in *Bass* is still the law. *See Oates v. Oates*, 340 Ark. 431, 435, 10 S.W.3d 861, 864 (2000); *FirstBank of Arkansas v. Keeling*, 312 Ark. 441, 445, 850 S.W.2d 310, 313 (1993).

 We clarify that our recent decision in *$735 in U.S. Currency, supra*, concerned an insufficient record for review. The critical issue in that case was not whether a motion for directed verdict had been made at the close of the evidence, but whether the appellant had provided an adequate record for us to review in order to determine her point on appeal. The appellant in that case moved for a directed verdict after the direct testimony of Officer Marx. *Id*. The motion was denied. The transcript then stated: "(Cross examination conducted . . . at this time.)" *Id*. However, the record contained no transcript of Officer Marx's cross-examination or of the subsequent testimony of appellant or her husband. We stated that we could not determine whether the circuit court's decision to grant the petition for forfeiture was clearly erroneous, because to do so required a review of "the entire record," which we did not have. *Id*. However, our statement that the appellant's argument regarding sufficiency of the evidence was not preserved for appeal where we could not determine "whether or not [she] renewed her motion for directed verdict at the close of all of the evidence," *id*., is error. Thus, to the extent that the statement in *$735 in U.S. Currency* conflicts with *Bass, supra*, we overrule it.

## II. Sufficiency of the Evidence

We now turn to the facts of this case. On September 10, 2003, Officer John Yates of the North Little Rock Police Department received an anonymous tip involving a Dodge Stratus and a Chevrolet Avalanche. While on patrol, Officers Shana Cobbs and

---

[1] We note that at the time that case was decided, in addition to applying to a motion for directed verdict, Rule 50(e) applied to a motion for judgment notwithstanding the verdict and a motion for new trial based on insufficiency of the evidence.

Brad Abbot, also of the North Little Rock Police Department, saw the two vehicles in a McDonald's parking lot and alerted Officer Yates by radio. Officer Cobbs observed a female, later identified as Tangela Jackson, get out of the Stratus and into the driver's seat of the Avalanche and a male, later identified as Ricky Herron, get out of the Avalanche and into the driver's seat of the Stratus. Both vehicles then left the parking lot and drove west on Interstate 40. While the officers were unable to determine at that point if there were others in the vehicles, they determined later that Ms. Jackson's boyfriend, LeJohn Martin, was a passenger in the Avalanche.

Officers Yates, Cobbs, and Abbot followed the vehicles off of an exit to a Wal-Mart parking lot. Officers Cobbs and Abbot then stopped the Avalanche for failing to use a turn signal. The Stratus circled around the Wal-Mart and came back toward the officers, who then revealed their badges, causing the Stratus to stop. From a background check, the officers determined that Mr. Herron, the driver of the Stratus, had an outstanding warrant for his arrest out of Sherwood. The officers arrested him and impounded his car. During an inventory search of the trunk of the Stratus, the officers found a large, black nylon bag containing marijuana residue and a Ziploc bag in a suitcase containing approximately 130 grams of marijuana.

Mr. Martin claimed that he was the owner of the Avalanche, but the truck had a temporary Texas license plate, and Mr. Martin was unable to provide proof of ownership. The officers then impounded the Avalanche. During an inventory search of the Avalanche, the officers discovered a blue plastic container with marijuana residue in the truck bed and $15,956 in cash inside some jeans in a passenger-side, truck-bed storage compartment. They also found $981 in cash in Ms. Jackson's purse and $200 cash in the front console. The Avalanche also contained two handguns. A drug dog was brought to the scene and alerted on both vehicles, but no additional contraband was discovered. The officers arrested Mr. Martin and Ms. Jackson and took them to the police station for questioning with Mr. Herron.

On October 31, 2003, the State initiated this *in rem* action requesting forfeiture of the $15,956 in cash found in the Avalanche pursuant to Ark. Code Ann. § 5-64-505(a)(6) (Repl. 2005). Appellants, Mr. Martin and David Wells, the owner of the Avalanche, responded, denying that forfeiture was authorized in this case. The circuit court held a hearing on the petition on February 14, 2005, at which the State presented the testimony of Officers Yates,

Cobbs, and Abbot. Randy Howard, a K-9 officer with the Pulaski County Sheriff's Office, and Kim Francisco, a narcotics investigator with the North Little Rock Police Department who performed the inventory search of the vehicles, also testified for the State. The only testimony presented by the appellants was the testimony of Mr. Wells.

All of the officers testified about following the vehicles, stopping them in the Wal-Mart parking lot, conducting an inventory search of the vehicles, and finding cash, marijuana, and marijuana residue. Officer Yates testified that, during his interview of Mr. Martin after his arrest, Mr. Martin said that he had just sold a vehicle in Memphis and that is where the $15,956 came from. Mr. Wells testified at trial that he owned several bail-bond companies in Dallas, and that Mr. Martin was an employee and a friend. He also testified that Mr. Martin had gone into business buying eighteen-wheeler trucks, and had talked him into buying a trailer and an eighteen-wheeler. Mr. Wells said that he let Mr. Martin borrow his Avalanche and gave him $16,000 in cash to go to Arkansas to buy a truck and trailer for him. He then testified that he had never been arrested, does not use drugs, and had never bought marijuana from Mr. Martin. On February 23, 2005, the circuit court entered judgment granting the petition for forfeiture. Mr. Martin and Mr. Wells filed this appeal.

Appellants argue that the circuit court erred in granting the petition for forfeiture because the money was not found "in close proximity" to an illegal substance. A forfeiture is an *in rem* proceeding, independent of the criminal charge, to be decided by the trial court by a preponderance of the evidence. *Limon v. State*, 285 Ark. 166, 168, 685 S.W.2d 515, 516 (1985). We will not set aside a trial court's decision granting forfeiture unless it is clearly erroneous. *$735 in U.S. Currency, supra.* A trial court's decision is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *State v. 26 Gaming Machines*, 356 Ark. 47, 51, 145 S.W.3d 368, 371 (2004).

The statutory provision governing the forfeiture in this case is Ark. Code Ann. § 5-64-505(a)(6) (Repl. 2005), which states as follows:

(a) ITEMS SUBJECT TO FORFEITURE. The following are subject to forfeiture upon the initiation of a civil proceeding filed by

the prosecuting attorney and when so ordered by the circuit court in accordance with this section, provided that no property shall be subject to forfeiture based solely upon a misdemeanor possession of a Schedule III, IV, V, or VI controlled substance:

(6) Everything of value furnished or intended to be furnished in exchange for a controlled substance or counterfeit substance in violation of this chapter, all proceeds and profits traceable to such an exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of this chapter; except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner by reason of any act or omission established by him, by a preponderance of the evidence, to have been committed or omitted without his knowledge or consent.

REBUTTABLE PRESUMPTIONS. All *moneys*, coin, and currency *found in close proximity to forfeitable controlled substances*, to counterfeit substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture, or distribution of controlled substances or counterfeit substances *are presumed to be forfeitable* under this paragraph. The burden of proof is upon claimants of the property to rebut these presumptions by a preponderance of the evidence.

(Emphasis added.)

Appellants' sole point on appeal concerns the rebuttable presumption in Ark. Code Ann. § 5-64-505(a)(6). Specifically, appellants claim that the money was not "found in close proximity to forfeitable controlled substances," and therefore the money was not "presumed to be forfeitable" under Ark. Code Ann. § 5-64-505(a)(6). To support this claim, appellants present two arguments.

Appellants' first argument involves the residue in the blue container that Officer Yates alleged was marijuana residue. They do not argue that the residue was not "in close proximity" to the money, but rather that the residue was not a "forfeitable controlled substance." Specifically, appellants argue that nothing in the record indicates that the residue was collected, taken into evidence, or tested, and, in the absence of an objective, scientifically valid, lab test of the container or the residue, the trial court could not conclude that the residue was a controlled substance. Alternatively, citing *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146

(1990), they argue that even if the residue was marijuana, it is not illegal to possess an object that contains the residue of a controlled substance. Under *Harbison*, appellants argue, the State must prove that a defendant possessed a "usable amount" of a controlled substance to support a conviction for possession of the controlled substance. Appellants contend that, because the State did not prove that the Avalanche contained a usable amount of marijuana, the case should have been dismissed.

We reject appellants' argument. First, Officer Yates testified that a large, blue bin in the truck bed of the Avalanche contained marijuana residue. At no time during the hearing did appellants offer another explanation for the residue. Moreover, appellants neither made an objection nor asked any questions about whether the residue had been collected, taken into evidence, or tested. We will not consider arguments raised for the first time on appeal. *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006). Finally, the trial court was free to assess the experience and demeanor of Officer Yates, and to believe his testimony. In reviewing a trial court's determination for clear error, we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Camarillo-Cox v. Ark. Dept. of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005); Ark. R. Civ. P. 52(a).

Furthermore, appellants' reliance upon *Harbison* to support their argument that, because the State did not prove that the Avalanche contained a usable amount of marijuana, the case should have been dismissed, is misplaced. *Harbison* involved a conviction under a criminal statute for possession of a controlled substance and has no application to a civil-forfeiture case. The fact that the controlled substance is residue, rather than a "usable amount," does not make the rebuttable presumption under the forfeiture statute inapplicable.

Appellants' second argument concerns the close-proximity element of the rebuttable presumption. Appellants claim that the marijuana found in the Stratus was not "in close proximity" to the money found in the Avalanche. They argue that the simple fact that Mr. Martin[2] drove Mr. Wells's Avalanche near a car owned by Mr. Herron containing drugs is not enough to establish that the

---

[2] We note that, contrary to statements and argument in appellants' brief, the record suggests that Ms. Jackson was the driver of the Avalanche. However, whether Mr. Martin or Ms. Jackson was driving the Avalanche is not relevant to the issue on appeal.

money was "in close proximity" to the drugs. Appellants assert that such a finding would create an absurd result, divesting occupants of a non-drug containing car of their money because they were some arbitrary distance from another car containing drugs.

We have stated that "in close proximity" simply means "very near." *Limon v. State*, 285 Ark. 166, 168, 685 S.W.2d 515, 516 (1985). However, we have also stated that whether one thing is in close proximity to another under the forfeiture statute is to be determined on a case-by-case basis, not by a particular number of feet, by reference to particular rooms, or by any rule of thumb. *Id.* (holding money found on shelf in bathroom and in kitchen drawer was in close proximity to drugs in bathroom and drug paraphernalia on kitchen table). "Thus, the interpretation of both depends upon the facts and circumstances existing in connection with their application." *Bozman v. Office of Fin. of Baltimore County*, 463 A.2d 832, 837 (Md. 1983) (holding that money found in bedroom safe, bedroom dresser, and wallet were "in close proximity" to contraband found in bedroom, bathroom, and separate bedroom); *see also Shook v. State*, 470 S.E.2d 535 (Ga. Ct. App. 1996) (money found on appellant and in his truck was "in proximity" to contraband found in truck and in shed near truck).

While appellants' point might be well taken if applied to two unrelated vehicles, the undisputed evidence in this case demonstrated that the two vehicles, and their occupants, were traveling together. Officer Cobbs and Officer Abbot observed the occupants of the cars switching places in a McDonald's parking lot. They then witnessed the two cars follow each other onto a freeway and exit together into a Wal-Mart parking lot. After the officers pulled over the Avalanche, the Stratus circled around and came back to stop near the Avalanche in the Wal-Mart parking lot.

Moreover, in a videotaped interview of Mr. Herron after the arrest, he stated that he was asked by Ms. Jackson if he knew anyone in the North Little Rock area who would want to buy pounds of marijuana. He stated that he then arranged a marijuana deal with a contact in North Little Rock, and that he rode in the Avalanche from Texas to North Little Rock with Mr. Martin, while Ms. Jackson followed them in the Stratus. He said that they met with his contact and sold two pounds of marijuana. Mr. Herron stated that he suspected that Mr. Martin and Ms. Jackson had come to North Little Rock to sell marijuana to people in addition to his contact. This was more than the discovery of drugs

and money in two unrelated, but physically close, cars. The occupants of these cars were traveling together, and had been doing so for hundreds of miles. Under these circumstances, we cannot say that the trial court's determination that the money was "in close proximity" to the marijuana was clearly erroneous.

Finally, we note that the appellants gave different explanations for the existence of the $15,956 in cash. When Officer Yates asked Mr. Martin where the money came from, he stated that he had just sold a vehicle in Memphis and gotten cash for the vehicle. However, Mr. Wells testified at trial that he gave Mr. Martin $16,000 in cash to go to Arkansas to buy a truck and trailer. No one testified at trial on behalf of the appellants to explain this discrepancy. This is not a criminal case, but a civil proceeding to be decided by the trial court by a preponderance of the evidence. *Limon v. State*, 285 Ark. 166, 168, 685 S.W.2d 515, 516 (1985). It appears that the trial court simply did not believe appellants' contrary explanations and found the State's witnesses more credible. We review the trial court's determination for clear error, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *$735 in U.S. Currency, supra; Camarillo-Cox, supra.*

After reviewing the entire evidence, and given our deference to the trial court's opportunity to judge the credibility of the witnesses, we cannot say that its decision granting the State's petition for forfeiture was clearly erroneous. Accordingly, we affirm.

HANNAH, C.J., and GLAZE, and IMBER, JJ., concur.

GLAZE and IMBER, JJ., dissent in part and affirm in part.

JIM HANNAH, Chief Justice, concurring. I concur; however, I write separately to address the majority's analysis. I agree that the circuit court did not err in granting the petition for forfeiture because the money found in the Avalanche was in close proximity to the marijuana found in the Stratus. However, I disagree with the majority's conclusion that the marijuana residue in the Avalanche constitutes an *additional* basis for forfeiture. Rather, the marijuana residue in the Avalanche is corroborative of other evidence that the Stratus and the Avalanche were involved in drug trafficking.

Officer Yates testified that he collected some marijuana residue from a large, blue bin in the truck bed of the Avalanche. As pointed out by appellants, there is nothing in the record showing

that the container was taken into evidence, tested in a laboratory, or proved to contain a quantity of marijuana sufficient to constitute a violation of Ark. Code Ann. § 5-64-505(a). Section 5-64-505 was amended by Acts 1999, No. 1120, § 1, which provides in part:

> Legislative intent. As stated in the comment to section 505 of the Uniform Controlled Substances Act, "Effective law enforcement demands that there be a means of confiscating the vehicles and instrumentalities used by drug traffickers in committing violations under this act. The reasoning is to prevent their use in the commission of subsequent offenses involving transportation or concealment of controlled substances and to deprive the drug trafficker of needed mobility." The General Assembly recognizes the importance of asset forfeiture as a means to confront drug trafficking. However, the General Assembly also recognizes that under the system that existed prior to the enactment of this act, the lack of uniformity and accountability in forfeiture procedures across the state has undermined confidence in the system. As the United States Supreme Court has stated, "Forfeiture provisions are powerful weapons in the war on crime; like any such weapons, their impact can be devastating when used unjustly." In order to alleviate the problems resulting from the lack of uniformity and accountability, the General Assembly has determined that time limits for initiating forfeiture proceedings and stricter controls over forfeited property will help alleviate such problems while strengthening forfeiture as a *vital weapon against drug trafficking. Specifically, it is the intent of § 5-64-505(a) that there be no forfeitures based solely upon a misdemeanor possession of a controlled substance. However, if the prosecuting attorney can prove that other evidence exists to establish a basis for forfeiture, the property may be forfeited.*

(Emphasis in original.)

By viewing the marijuana residue in isolation, the majority is setting a precedent that will allow forfeitures in cases based solely upon a misdemeanor possession of a controlled substance. By holding that the marijuana residue in the Avalanche, standing alone, provides a basis for forfeiture, the majority ignores the express intent of the General Assembly.

GLAZE and IMBER, JJ., join.

TOM GLAZE, Justice, dissenting in part, affirming in part. First, I note the court of appeals certified this case to us

suggesting there may be a conflict in our case law. The court of appeals refers to our recent case of *$735 in U.S. Currency v. State*, 364 Ark. 526, 222 S.W.3d 209 (2006) where we said that a party appealing from a non-jury trial could not challenge the sufficiency of the evidence if he had not properly renewed his directed-verdict motion at the close of the plaintiff's evidence. The court of appeals suggests the holding in the *$735 in U.S. Currency* case is inconsistent with this court's long-settled rule that a party in a non-jury trial who makes no directed-verdict motion does not waive his or her right to question the sufficiency of the evidence on appeal. *See Oates v. Oates*, 340 Ark. 413, 10 S.W.3d 861 (2000); *FirstBank v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993) (citing *Bass v. Koller*, 276 Ark. 93, 632 S.W.2d 410 (1982)). In these cases, the court held that in a bench trial, it is *not necessary* to move for a directed verdict in order to appeal on the basis of insufficiency of the evidence. *See also* Ark. R. Civ. P. 50(a) which provides, "in non-jury cases a party *may* challenge the sufficiency of the evidence at the close of the opponents' evidence by moving either orally or in writing to dismiss the opposing party's claim for relief and the motions may also be made at the close of all of the evidence and in every instance the motion shall state the specific grounds therefore."

In sum, while a party is not required to make a directed verdict to preserve an insufficiency of the evidence issue on appeal, a party may do so. For example, a party defendant *may* move to test the plaintiff's evidence at the close of plaintiff's case for the procedural purpose of determining whether the plaintiff has met the burden of establishing a *prima facie* case, with that question to be resolved by the trial court as a matter of law. Certainly a defendant may feel compelled to challenge a plaintiff's case forthwith if the defendant is confident plaintiff has failed to meet his or her burden of proof. *See Wilson Safety Products v. Eschenbrewer*, 302 Ark. 228, 788 S.W.2d 729 (1990). If the party's motion is overruled, the defendant may elect to stand on his motion or go forward with the production of additional evidence, in which case the party defendant waives any further reliance upon the former motion. Therefore, their sufficiency challenge is not preserved for appellate review.

In other words, a party defendant does not have to move for a directed verdict in order to preserve a sufficiency challenge for appeal; however, if the defendant does move for a directed verdict,

which is denied, and the defendant goes forward, the defendant must renew his motion for directed verdict or the issue is waived.

In the instant case, the defendants/respondents chose to move for a directed verdict to dismiss the State/petitioner's complaint for a forfeiture. The trial court denied the motion and the defendants did not renew their motion for directed verdict at the close of all of the evidence, and the court granted the State's petition for forfeiture. Because the defendants failed to preserve their sufficiency-of-evidence issue, I would affirm. The majority's suggestion that *$735 in U.S. Currency* is anyway inconsistent with our prior case law is just plain wrong. Simply stated, our recent case is factually and procedurally different.

IMBER, J., joins this opinion.