

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-274

| | | |
|---|---|---|
| | | Opinion Delivered: NOVEMBER 16, 2016 |
| SAAD WAQAR SALIM | | APPEAL FROM THE MISSISSIPPI |
| | APPELLANT | COUNTY CIRCUIT COURT, |
| | | CHICKASAWBA DISTRICT |
| V. | | [NO. 47CV-13-105] |
| | | |
| | | HONORABLE BRENT DAVIS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Saad Waqar Salim appeals from the Mississippi County Circuit Court's order of forfeiture. On appeal, Salim contends that (1) the circuit court improperly refused to dismiss the State's forfeiture petition for lack of prosecution; (2) the circuit court's findings that the money was related to drug trafficking and in close proximity to contraband are clearly erroneous; and (3) he was prejudiced by the circuit court's refusal to dismiss the forfeiture proceeding, as the State would be prohibited from refiling its forfeiture complaint. We disagree and affirm.

This case began after the State filed a forfeiture complaint on May 30, 2013, pursuant to Arkansas Code Annotated section 5-64-505 (Repl. 2016), naming Salim and Tiffany Stevens as defendants.[1] The State alleged that the $1,400 seized during the execution of a

---

[1]Tiffany Stevens is not a party to this appeal.

search warrant at a Shell Superstop was subject to forfeiture. Appellant filed an answer and requested that the complaint be dismissed and the money returned to him.

Subsequently, appellant filed a motion to dismiss for failure to prosecute on October 6, 2014. In his motion, he alleged that there had been no activity in the case for over twelve months and that the circuit court had the inherent power to dismiss a case due to a failure to prosecute with due diligence, citing *Gordon v. Wellman*, 265 Ark. 914, 582 S.W.2d 22 (1979). In its response, the State explained that, to avoid any double-jeopardy issues, it did not want to proceed with the disposition of the forfeiture action before the criminal action was decided. However, the State further explained that the criminal proceeding had just been disposed of on October 6, 2014, and that it would be seeking to dispose of the forfeiture action. Appellant filed a reply, additionally alleging that the case should be dismissed pursuant to Arkansas Rule of Civil Procedure 41(b).

The record reflects that on June 29, 2015, the State requested that the case be set for trial, and a scheduling order was sent on the same day setting the case for nonjury trial on October 8, 2015. The next day, appellant filed an amended motion to dismiss for failure to prosecute, requesting that the circuit court enter an order dismissing the case for the State's failure to prosecute. On the day of trial, the circuit court addressed the pending motions. The circuit court noted that the record did not reflect that a notice had been sent by the court pursuant to Rule 41(b), triggering the State to show good case as to why the case should not be dismissed; appellant's counsel conceded that a notice had not been issued. Appellant's counsel additionally admitted that he had not scheduled or obtained a hearing date to address the pending original or amended motion to dismiss but asked the court to

address the motion at that time and dismiss the case. The State responded that appellant had

not shown that he had been disadvantaged by the delay and argued that he had, in fact,

benefited from the delay because appellant had been facing both a civil and a criminal case

at the same time. Additionally, the State explained that its office had been short-staffed.

After hearing oral argument, the circuit court denied the motion and made the

following findings:

> It's the court's determination that at least it's a, number one, that under 41(b) it's the court's action that would trigger if 41(b) relief or if a dismissal is to be entered pursuant to 41(b), then it would be after the court initiated or sent notice to the parties, particularly the plaintiff, that the case had been without action for a significant period of time, in the excess of twelve months, and in this case, that wasn't done.
>
> Frankly, the filing of a civil forfeiture action with a pending criminal action that's been filed in our district, typically, those pending civil actions, unless pending for an extensively long time, if there are criminal actions that involve the same evidence, the same time, share of the same allegations, then typically the civil action is delayed or continued until the criminal action is brought to some conclusion, one way or another.
>
> One of the reasons being that with a criminal action pending, any possible testimony on the part of the defendants may force them into a situation if the case is scheduled, that a person facing criminal charges for allegations of possession of the same items may very well be forced and put in a position where they have to choose between their right to remain silent, or be placed in a position where they waive or give up that right because the civil action is being pursued initially.
>
> And for those reasons, typically, the civil action is delayed until some disposition on the criminal action takes place.
>
> But the court did not send notice; without notice, the State couldn't be triggered or required to respond. This is the service with July 22nd, 2013. We're two years down the road, basically, at this point, or it was two years down the road when the case was scheduled for trial. For civil actions, that's not an unusually long time.
>
> There are no allegations that because of the delay in time there's been a loss of any evidence that there's been a prejudice to the defendant to proceed, and finally, it appears to the court that once this matter was scheduled and notice up for hearing

in June or July of this year, and it's scheduled, that all witnesses are present, all parties are present.

And even if the court was to somehow, without the notice required by Rule 41(b), if the court was to dismiss it, it would be without prejudice and the State would have the right to bring the action again.

So we would be right back to where we are now with the parties back here having that opportunity and the court just finds that the provisions of 41(b), there has not been an undue delay that would merit the court exercising its discretion to dismiss the action for failure to prosecute the action or to proceed on the action as the plaintiff in a civil matter and that because no notice was sent out to perform, then in accordance with 41(b) that it would be improper for the court to dismiss it based under that rule.

So the court is going to deny the motion, the request for motion to dismiss, an order to dismiss based on the original motion, and as well as amended motion.

At trial, Sergeant Chris Griggs with the Second Judicial District Drug Task Force testified that he had been assigned to the case involving the execution of a search warrant at the Shell Superstop. He had previously received information that the store had been illegally selling synthetic marijuana (also known as K-2). Therefore, two undercover controlled buys were set up at the store, the first one on March 21, 2013, and the second one on April 12, 2013. At the second controlled buy, the confidential informant exchanged fifty dollars with the cashier for suspected K-2, and the confidential informant reported that the cashier had placed the money into a safe. Afterward, a search warrant was obtained and executed the same day.

As a result of the search, the task force found K-2 and other drug paraphernalia located underneath the counter and "Blueberry Muff" (a controlled substance) in a computer case located on top of the store counter. Additionally, $1,400 was recovered from a safe located underneath the counter and within four feet of the drugs and other drug

paraphernalia, which included the $50 used in the second controlled buy. Salim and Stevens, who were working at the store at the time, were arrested. Sergeant Griggs further explained that Salim had entered a guilty plea in his criminal case to possession of a controlled substance with purpose to deliver, possession of drug paraphernalia used to manufacture and distribute K-2, and possession of drug paraphernalia used to ingest or inhale K-2 and that the charges against Stevens had been nolle prossed. On cross-examination, Sergeant Griggs clarified that the substance obtained from the second controlled buy was not an illegal substance, so the controlled buy was not illegal at the time. However, there were substances found during the search that tested positive as controlled substances. Sergeant Griggs further testified that he had thought that the money obtained in the search of the safe was from the sale of K-2 because of the way it was packaged. There were no printouts from where a cashier might have cleared out the cash register or deposit slips; instead, the money was just found in the safe.

Salim testified that he worked at the Shell Superstop, and the store sold many different products in addition to gasoline. Salim further testified that the store had only the one safe and that he would just drop money in the safe to keep the cash register low in case of any robberies. He admitted that he had sold about twenty to thirty bags of K-2 at $50 each, and he did not know how many bags Stevens had sold. Although the store sold other products on a daily basis, Salim failed to introduce any records or receipts from any sales. Salim additionally admitted entering a guilty plea to several criminal charges that he received as a result of the search and that he received a total of twenty-four months' suspended imposition of sentence.

 

The circuit court subsequently filed an order of forfeiture, specifically finding the following:

1. This is an in rem action for the forfeiture of personal property seized in Mississippi County, Arkansas, filed pursuant to A.C.A. 5-64-505.
2. The subject matter of this action is $1,400.00 in United States Currency.
3. The property seized, $1,400.00 in United States Currency, was found in close proximity to the controlled substances that were found.
4. The $1,400.00 seized was co-mingled with $50.00 of Drug Task Force Buy Money.
5. The defendant, Saad Salim, testified he had sold approximately 30 packets of K2 at this location at $50.00 per packet.
6. That Saad Salim did not overcome the presumption that any money found in close proximity to a forfeitable controlled substance is presumed to be forfeitable under Arkansas Code Annotated § 5-64-505(a)(7)(A).
7. The court does find that the $1,400.00 in United States Currency seized in this matter is hereby forfeited and shall be disposed of according to the law.

This appeal followed.

Appellant first argues that the circuit court improperly refused to dismiss the State's forfeiture petition for lack of prosecution. Appellant alleges that the circuit court "ruled that it was the 'usual' practice to wait until a criminal proceeding was resolved before going forward with a forfeiture proceeding, reasoning that doing otherwise would cause double jeopardy or self-incrimination issues in the criminal case." Appellant specifically argues that the circuit court refused to send a notice pursuant to Rule 41(b) and then accepted an erroneous interpretation of the law that there were double-jeopardy concerns as a good excuse for the State's delay in prosecuting the case. He thus reasons that the circuit court abused its discretion in denying the motion to dismiss.

Appellant's arguments are premised on the fact that the circuit court denied his motion to dismiss under a misunderstanding of the law that a delay was warranted because there would be double-jeopardy implications if the court were to proceed with the

forfeiture action while the criminal action was still pending. A careful reading of the circuit court's ruling reveals that the circuit court found that "there has not been an undue delay that would merit the court exercising its discretion to dismiss the action for failure to prosecute the action or to proceed on the action as the plaintiff in a civil matter." However, the circuit court did not mention double-jeopardy concerns as the reason for its ruling. Instead, the circuit court explained,

> One of the reasons being that with a criminal action pending, any possible testimony on the part of the defendants may force them into a situation if the case is scheduled, that a person facing criminal charges for allegations of possession of the same items may very well be forced and put in a position where they have to choose between their right to remain silent, or be placed in a position where they waive or give up that right because the civil action is being pursued initially.
> And for those reasons, typically, the civil action is delayed until some disposition on the criminal action takes place.

The circuit court additionally reasoned that two years for a civil trial was not an unusually long time to wait and that all the parties and witnesses were present at that time to proceed with the trial.

As the State correctly notes in its responsive brief, appellant does not specifically argue that the circuit court erred in its self-incrimination reasoning for denying the motion to dismiss in his initial brief. When a circuit court bases its decision on more than one independent ground and appellant challenges fewer than all those grounds on appeal, we will affirm without addressing any of the grounds. *Fennell v. City of Pine Bluff*, 2016 Ark. App. 275, 492 S.W.3d 887. Furthermore, to the extent appellant addresses the grounds for the circuit court's denial in his reply brief, an argument made for the first time on reply comes too late. *Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dirs.*, 2015 Ark. App. 648, 476 S.W.3d 174. Unless an appellant files an initial brief with all its arguments for

reversal, an appellee has no opportunity to respond to those arguments in writing, and it is well established that we will not consider an argument made for the first time in a reply brief. *Id.* Therefore, we must summarily affirm appellant's first point on appeal without addressing the merits.

Next, appellant argues that the circuit court's findings that the money was related to drug trafficking and in close proximity to contraband are clearly erroneous. He contends that the money in the safe more than likely came from the sale of consumer goods that were legal rather than from the sale of controlled substances as found by the circuit court. He further argues that the State's proof in this case raised nothing more than speculation and conjecture and that the State's forfeiture action should have been denied due to a lack of proof. We disagree.

A forfeiture is an in rem proceeding, independent of the criminal charge, to be decided by the circuit court by a preponderance of the evidence. *$15,956 In U.S. Currency v. State*, 366 Ark. 70, 233 S.W.3d 598 (2006). We will not set aside a circuit court's decision granting forfeiture unless it is clearly erroneous. *Id.* A circuit court's decision is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.*

The statutory provision governing forfeitures is set forth in Arkansas Code Annotated section 5-64-505(a), which provides in relevant part as follows:

> (a) Items Subject to Forfeiture. The following are subject to forfeiture upon the initiation of a civil proceeding filed by the prosecuting attorney and when so ordered by the circuit court in accordance with this section, however no property is subject

to forfeiture based solely upon a misdemeanor possession of a Schedule III, Schedule IV, Schedule V, or Schedule VI controlled substance:

. . . .

6)(A) Anything of value, including firearms, furnished or intended to be furnished in exchange for a controlled substance or counterfeit substance in violation of this chapter, any proceeds or profits traceable to the exchange, and any money, negotiable instrument, or security used, or intended to be used, to facilitate any violation of this chapter.

. . . .

(7) Rebuttable Presumptions.
(A) Any money, coin, currency, or firearms found in close proximity to a forfeitable controlled substance, a counterfeit substance, forfeitable drug manufacturing or distributing paraphernalia, or a forfeitable record of an importation, manufacture, or distribution of a controlled substance or counterfeit substance is presumed to be forfeitable under this subdivision (a)(7).
(B) The burden of proof is upon a claimant of the property to rebut this presumption by a preponderance of the evidence[.]

Ark. Code Ann. § 5-64-505(a)(6)−(7)(B).

Thus, under Arkansas law, for property to be subject to forfeiture, the State must prove by a preponderance of the evidence that the property was "used, or intended to be used" to facilitate a violation of the Uniform Controlled Substances Act. Ark. Code Ann. § 5-64-505(a)(6). If, however, the property is found in close proximity to a forfeitable controlled substance, then it is presumed to be forfeitable, and the burden of proof rests with the claimant of the property to rebut this presumption by a preponderance of the evidence. Ark. Code Ann. § 5-64-505(a)(7). The circuit court applied the presumption in this case.

In this case, the money found in the safe was located within four feet of the forfeitable property, controlled substances and drug paraphernalia. Sergeant Griggs testified that some

of the samples seized in the search of the Shell Superstop tested positive for a Schedule VI controlled substance. Moreover, appellant admitted that he had pleaded guilty to the possession charges based on the evidence seized and further testified that he had sold between twenty to thirty packages of K–2 for $50 per package. Although appellant argues that the money could have come from the sale of legal items, he did not introduce any receipts or records to support this claim. Therefore, we cannot say that the circuit court's findings were clearly erroneous, and we affirm the circuit court's order of forfeiture.

Appellant lastly argues that he was prejudiced by the circuit court's refusal to dismiss the forfeiture proceeding, as the State would be prohibited from refiling its forfeiture complaint. He specifically argues that the savings statute applicable to nonsuits under Arkansas Code Annotated section 16-56–126(a)(1) (Repl. 2005) does not apply to forfeiture actions and that if the circuit court had dismissed the case for failure to prosecute under Rule 41(b), then the savings statute would not permit the State to refile. However, as we explained above, the circuit court found that there was not an undue delay in prosecution, and whether he was prejudiced by the circuit court's failure to dismiss the case is therefore now irrelevant. As such, we affirm.

Affirmed.

GLADWIN, C.J., and KINARD, J., agree.

*James Harris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.